E-FILED
Friday, 28 September, 2012  04:11:02 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| Stephen Johnson, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:11-cv-4058-SLD-JAG |
| | ) |
| The City of Rock Island, Illinois, a municipal corporation, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Plaintiff Stephen Johnson brings this action against the City of Rock Island in response to what he claims were violations of his First Amendment rights by Rock Island police officers. Johnson alleges that he was threatened with arrest for disorderly conduct in order to unconstitutionally chill his protected speech. Johnson twice moved for a preliminary injunction, based on incidents arising on June 11, 2011, and April 26, 2012. (*See* ECF Nos. 12, 19.) In these motions, Johnson challenges local Rock Island Ordinance No. 10-21 as facially unconstitutional and argues that the alleged application of Ordinance No. 10-21 and/or Illinois Disorderly Conduct statute (720 ILCS 5/26-1(a)(1)) against his activities of "preaching" and "distributing literature" was unconstitutional.

The Court held a hearing on the motion regarding the June 11, 2011, incident. Having considered the motions, the evidence filed with the Court, and the testimony of witnesses, the Court finds that Johnson lacks standing to challenge the constitutionality of the local ordinance and that he lacks standing to seek an injunction regarding his literature distribution activity. Accordingly, the Court DENIES Johnson's Second Amended Motion for a Preliminary Injunction (ECF No. 12) and those aspects of Johnson's Motion for a Temporary Restraining

1

Order (ECF No. 19) that challenge the local ordinance or seek an injunction regarding literature distribution and DISMISSES those claims from this case.[1]  The Court DEFERS RULING on Johnson's allegation that Defendant's alleged application of the Illinois Disorderly Conduct statute against him was unconstitutional until after the hearing currently scheduled for November 8, 2012.

**I. BACKGROUND**

On the afternoon of June 11, 2011, Johnson went to downtown Rock Island, Illinois and "handed out Gospel tracts and began to preach the Gospel." (Compl. ¶¶ 6-10.)  Johnson preached for approximately 45 minutes on a street corner near the entrance to a summer festival that was scheduled to start later that afternoon. (Hr'g Tr. 50:6-8, ECF No. 21.)  Johnson testified that he preached with a "raised voice" that he projected loudly in order to get people's attention, but did not use any amplification. (Hr'g Tr. 16:9-11, 47:1-4.)  He said that while he was preaching he was approached by some private citizens that told him that he should stop. (Hr'g Tr. 14:25-15:5, 50:14-51:6.)

After he finished preaching, Johnson was approached by two Rock Island police officers. (Compl. ¶¶ 10-11; Hr'g Tr. 20:9-21:4.)  The officers were dispatched to Johnson's location after the police department received a telephone call of a disturbance in the area. (Hr'g Tr. 94:4-6,

---

[1] During the July 9, 2012 telephonic hearing, Johnson's counsel conceded that the allegations set forth in Plaintiff's Supplemental Motion for a Preliminary Injunction and Motion for a Temporary Restraining Order (the "Supplemental/TRO Motion," ECF No. 19) arising out of the events of April 26, 2012 did not include any threat of arrest under Ordinance No. 10-21 and did not involve any dispute about the distribution of literature.  However, the Supplemental/TRO Motion did repeat the allegations challenging the constitutionality of Rock Island's allegedly threatened application of Illinois' Disorderly Conduct Statute, 720 ILCS 5/26-1(a)(1), against Johnson as set forth in Johnson's Supplemental Brief to His Second Amended Motion for a Preliminary Injunction (ECF No. 16-1).  Thus, the only issue from Johnson's various motions requiring further judicial resolution is his "as applied" constitutionality challenge to the Illinois Disorderly Conduct Statute.

100:4-8.) Johnson and one of the officers, Officer Jonathan Cary, engaged in a conversation. Officer Cary informed Johnson that they were investigating a disturbance and asked Johnson what he was doing. (Hr'g Tr. 93:25-94:6, 102:25-103:8.) Johnson told Cary that he was there "to preach the Gospel" and to hand out literature. (Hr'g Tr. 27:14-16, 94:7-18.)

After the initial exchange, Johnson and Officer Cary's testimony regarding the remainder of their conversation is somewhat divergent. However, it is clear that Officer Cary never saw Johnson preaching and never affirmatively stopped him from doing so. (Hr'g Tr. 20:10-14, 50:2-51:9, 93:12-24.) Indeed, Johnson admitted that he had already finished preaching at the time they had their conversation. (Hr'g Tr. 20:10-14, 50:2-51:9.) Also, there is no dispute that Johnson quizzed Officer Cary on what Johnson could and could not do in connection with his preaching activities. (*See, e.g.*, Hr'g Tr. 31:10 ("and I kept pressing him what that means").) In response, Officer Cary informed Johnson that he was entitled to engage in his preaching activities so long as he did not do so in a manner that would amount to disorderly conduct.

### A. Facts Related to Distributing Literature

Officer Cary never saw Johnson distributing religious literature, though Johnson informed Officer Cary that he had previously done so. (Hr'g Tr. 16:12-21, 41:21-25; 94:7-15.) Both Officer Cary and Johnson agree that Officer Cary conveyed to Johnson that it was okay for Johnson to distribute literature. (Hr'g Tr. 30:20-23, 96:17-24.)

### B. Facts Related to Rock Island Ordinance No. 10-21

Officer Cary engaged in a hypothetical conversation with Johnson related to the metes-and-bounds of acceptable conduct. The discrepancies between Johnson's and Officer Cary's testimony that are material to this Order relate to the actual law that Officer Cary was relying on when he was answering Johnson's questions about what he could and could not do. For his part,

Johnson contends that Officer Cary told him that he could not "raise his voice," "offend anyone," or "disturb anybody." (Hr'g Tr. 29:14-20.) Johnson testified that the last thing Officer Cary said "over and over and over again is I could not disturb—say anything that would disturb anybody in any way." (Hr'g Tr. 29:18-20.) Johnson then contends that Officer Cary informed him that he was relying on a "city ordinance" that prohibits disturbing the peace, but that Officer Cary refused to identify the ordinance with any specificity. (Hr'g Tr. 29:23-30:1.) When Johnson asked Officer Cary to "read" him the ordinance or "explain it" to him, he testified Officer Cary said that Johnson could look it up online. (Hr'g Tr. 30:2-7.) Johnson contends that Officer Cary's explanations amounted to a threat of arrest. (Hr'g Tr. 36:17-23.)

Officer Cary testified that during their discussion he only informed Johnson of "the guidelines of disorderly conduct, which is an arrestable offense" under Illinois law. (Hr'g Tr. 98:18-19.) He further testified that he informed Johnson that the disorderly conduct law prohibited Johnson from doing anything that would "alarm or disturb" another. (Hr'g Tr. 98:20-21, 103:9-104:1.) Officer Cary stated that he never said that Johnson had alarmed or disturbed anyone by his preaching prior to arriving at the scene (Hr'g Tr. 98:21-24), and Officer Cary was adamant that he never discussed any ordinance with Johnson. (*See* Hr'g Tr. 100:20-102:5.)

## II. ANALYSIS

### A. Legal Standard

The fundamental importance of the right to be free from unconstitutional governmental intrusions while exercising the right to free speech under the First Amendment is unquestioned. *See, e.g., Bose Corp. v. Consumers Union of United States, Inc.*, 466 U. S. 485, 503-504 (1984) ("[T]he freedom to speak one's mind is not only an aspect of individual liberty — and thus a good unto itself — but also is essential to the common quest for truth and the vitality of society

as a whole."). At the same time, "[i]t goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Art. III of the Constitution by alleging an actual case or controversy." *Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) (internal citations omitted). This question of standing, even in the context of the First Amendment, is not subject to waiver. *United States v. Hays*, 515 U.S. 737, 742 (1995). Indeed, the Court must examine a plaintiff's standing even if the parties fail to raise the issue. *Id.* ("The federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines.'") (quoting *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 230-231 (1990) (citations omitted)). To satisfy standing, a plaintiff seeking to challenge governmental action must demonstrate (1) an injury in fact, (2) that the defendant's action caused the injury, and (3) that the remedy the plaintiff seeks would redress the injury. *See ACLU of Ill. v. Alvarez*, No. 11-1286, 2012 WL 1592618, at *5 (7th Cir. May 8, 2012).

When an injury is too speculative, plaintiffs generally lack standing. *Younger v. Harris*, 401 U.S. 37, 42 (1971) ("persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs in such cases"). Although "a plaintiff need not 'first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute,'" *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 302 (1979) (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 (1974)), "a litigant must demonstrate a credible threat of prosecution under a statute that appears to render the litigant's arguably protected speech illegal." *American Library Ass'n v. Barr*, 956 F.2d 1178, 1194 (D.C. Cir. 1992); *see also Babbitt*, 442 U.S. at 298. "The harm of 'chilling effect' is to be distinguished from the immediate threat of concrete, harmful action. The former consists of present deterrence

from First Amendment conduct because of the difficulty of determining the application of a regulatory provision to that conduct, and will not by itself support standing." *United Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375, 1380 (D.C. Cir. 1984) (Scalia, J.). Rather, a plaintiff seeking prospective relief must establish that he "is immediately in danger of sustaining some direct injury as the result of the challenged official conduct[,] and [that] the injury or threat of injury [is] both real and immediate, not conjectural or hypothetical." *Lyons*, 461 U.S. at 102 (internal quotation marks omitted).

A plaintiff has the burden of demonstrating that he has standing for each separate form of relief sought. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *see also Schirmer v. Nagode*, 621 F.3d 581, 584 (7th Cir. 2010) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 185 (2000)). To carry this burden a plaintiff must provide "competent proof" in support of the allegations, meaning that plaintiff must show "by a preponderance of the evidence, or proof to a reasonable probability, that standing exists." *Zamecnik v. Indian Prairie School Dist. No. 207 Bd. of Educ.*, No. 07-cv-1586, 2009 WL 805654, at *1 (N.D. Ill. 2009) (quoting *Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996)) (internal citations omitted). The Court is "free to weigh the evidence to determine whether jurisdiction has been established." *Id.* (quoting *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003)).

**B. Standing to Seek Injunction Related to Distributing Literature**

Johnson seeks an injunction barring Defendant from suppressing or interfering with his right to peacefully distribute literature on public sidewalks. It is Johnson's burden to demonstrate standing to seek this form of relief. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *see also Schirmer v. Nagode*, 621 F.3d 581, 584 (7th Cir. 2010) (quoting

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 185 (2000)).  Johnson has not satisfied his burden.

Johnson was never precluded from handing out literature, was not arrested, and was never threatened with arrest for his stated intention to hand out tracts of literature.  To the contrary, Officer Cary explicitly told Johnson that he was permitted to distribute literature.  Indeed, Johnson himself admits that he was informed that he could "hand out Bibles and Gospel tracts."  (Hr'g Tr. 30:20-23.)  Johnson nevertheless argues that he faces a credible threat of prosecution if he peacefully distributes literature on the public sidewalks of downtown Rock Island.

On the present facts, Johnson cannot carry the burden of establishing a credible threat of prosecution for his distribution of literature.  *See Barr*, 956 F.2d at 1194; *Babbitt*, 442 U.S. at 298; *Summers*, 555 U.S. at 493.  The fact that Johnson was never prevented from distributing literature and, conversely, was explicitly informed of his right to do so weighs heavily against finding a credible threat of prosecution.  Rather, any subjective fear Johnson may have based on his interaction with the Rock Island police officers is simply not objectively reasonable as it relates to the distribution of literature.  Johnson has offered no other facts that would tend to suggest that he faces a credible threat of prosecution should he peacefully distribute literature on public sidewalks.  Thus, the Court finds that Johnson's subjective fear of future injury is too hypothetical to confer standing.  *Amnesty Int'l USA v. Clapper*, 638 F.3d 118, 134 (2nd Cir. 2011) (citing *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)); *Myron v. Chicoine*, 678 F.2d 727, 730 (7th Cir. 1982) ("In order to invoke a court's power of judicial review, it is incumbent upon a litigant to demonstrate an injury which is real, not imaginary; concrete, not abstract; apparent, not illusory; and demonstrable, not speculative.").

7

Accordingly, Johnson's motion is DENIED to the extent it seeks an order barring Defendant from suppressing or interfering with Johnson's peaceful literature and Bible distribution on public sidewalks.

**C. Standing to Challenge the Constitutionality of Rock Island Ordinance 10-21**

Johnson's standing to challenge the constitutionality of Rock Island Ordinance 10-21 (hereafter "the Ordinance") hinges on the existence of a credible threat that he will be prosecuted under it if he were to engage in his anticipated future conduct. *See Barr*, 956 F.2d at 1194; *Babbitt*, 442 U.S. at 298. Johnson's counsel conceded that the April 26, 2012, incident did not involve any mention, let alone a threat of prosecution, under the Ordinance. Hence, Johnson bases his asserted fear of prosecution under the Ordinance solely on his June 11, 2011, conversation with Officer Cary. The Court concludes that this conversation does not create a credible threat of prosecution under the Ordinance. Consequently, Johnson does not have standing to challenge either the "facial" or "as applied" constitutionality of the Ordinance.

Based on the demeanor of the witnesses and content of the testimony regarding the June 11, 2011, incident, the Court finds that Officer Cary made a good-faith effort to answer Johnson's various hypothetical questions by describing the State of Illinois' Disorderly Conduct Statute (720 ILSC 5/26-1) and not the Ordinance. Officer Cary was confident that he was referring to the Illinois State law in his answers. Johnson, on the other hand, was adamant that Officer Cary kept telling him that "disturbing" people was not acceptable conduct, but seemed less certain that Officer Cary ever identified any specific law. Furthermore, Johnson's focus on Officer's Cary's repeated reference to "disturb" as the key take-away from the discussion is consistent with Officer Cary's testimony that he informed Johnson that conduct that would "alarm or disturb" citizens runs afoul of the Illinois Statute.

8

On these facts, Johnson's subjective belief regarding the potential of arrest and prosecution pursuant to the Ordinance is simply too speculative to establish a credible threat of prosecution under the Ordinance. *See United Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375, 1380 (D.C. Cir. 1984) ("The problem with appellants' attempt to rely upon [harm of 'chilling effect'] to establish standing in the present case is that they have not adequately averred that any specific action is threatened or even contemplated against them."). Indeed, the Seventh Circuit has held that even plaintiffs who have been previously arrested and prosecuted for violating a law "is insufficient in itself to establish that person's standing to request injunctive relief." *Schirmer v. Nagode*, 621 F.3d 581, 584 (7th Cir. 2010) (citing *Steel Co. v. Citizens for a Better Env.*, 523 U.S. 83, 108 (1998)). Here, however, Johnson was subjected to far less of a threat of prosecution or arrest and Officer Cary does not even appear to have been considering the Ordinance during his conversation with Johnson.

In sum, Johnson has not demonstrated a credible threat that Defendants will enforce the Ordinance against him in the future. *Barr*, 956 F.2d at 1194; *see also Babbitt*, 442 U.S. at 298. Johnson's subjective fear of prosecution under the Ordinance is too speculative to confer Article III standing to challenge the Ordinance's constitutionality.

**III. CONCLUSION**

Based on consideration of the record before the Court, including the Complaint, briefs, exhibits, and hearing testimony, the Court finds that Johnson's subjective allegations of harm related to (1) distributing literature and (2) arrest under Rock Island Ordinance No. 10-21, are too speculative to present a justiciable case or controversy within the meaning of Article III of the Constitution. The Court therefore DENIES-IN-PART Johnson's motion for preliminary injunction [#12, 19] and, for lack of standing, DISMISSES the claims in Johnson's Complaint

that seek injunctive relief related to distributing literature and that challenge the constitutionality of Rock Island Ordinance 10-21. The Court further DEFERS RULING on Johnson's allegation that Defendant's alleged application of the Illinois Disorderly Conduct statute against him was unconstitutional [#19] until a hearing is held on the April 26, 2012 incident.

Entered this 28th day of September, 2012.

s/ Sara Darrow<br>
SARA DARROW<br>
UNITED STATES DISTRICT JUDGE